SALEM NURSERY, INC. *v.* DEPARTMENT OF REVENUE

OREGON ASSOCIATION OF BEDDING PLANT GROWERS, INC. ET AL, *Intervenors.*

James O. Garrett, Crawford, Garrett & Webb, Salem, represented plaintiff.

Gerald J. Meindl, Portland, represented intervenors.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered July 20, 1971.

CARLISLE B. ROBERTS, Judge.

The plaintiff, an Illinois corporation authorized to do business in Oregon, operates a nursery located at the edge of the City of Salem, Oregon, specializing in the production of azalea plants to be sold at wholesale. The plants are grown entirely in movable containers and wholly within the various greenhouses located on the property. The containers in which the plants are

grown vary in size; as the plants develop, they are transplanted to larger vessels so that by the time they are ready for sale, each plant has its own individual container, containing 75 percent peat moss and 25 percent fir bark. At no time are the plants in the ground, and they are always separated from the ground by the container. During much of the period of cultivation, they may be set on tables of convenient height for efficient work.

On April 29, 1969, the Marion County Assessor notified the plaintiff that all plants which were potted, flatted or balled were "merchandise inventory in your business and will have to be reported as such." On May 27, 1969, the assessor notified the plaintiff that he intended to place on the 1969-70 tax roll a personal property tax inventory in the amount of $10,000, representing the true cash value of the plants as of January 1, 1969 (pursuant to the requirements of ORS 307.030), unless good cause was shown to the contrary. On June 18, 1969, the plaintiff appeared in the office of the assessor, pursuant to the letter of May 27, 1969, claiming exemption of the property, but the claim was denied in writing on June 26, 1969, on the ground that the statutory exemption on which the plaintiff relied, ORS 307.320, applied only to flowers or plants "growing in the ground" and not those growing in pots or containers "which are movable in nature and which are not a part of the land itself." Thereupon a petition for review of the assessor's action was filed with the Department of Revenue on July 24, 1969, and it was heard on December 18, 1969. More than 12 months having elapsed following the month in which the appeal to the Department of Revenue was taken, and no decision having been rendered, the plaintiff elected to

treat the appeal as denied (ORS 306.537) and filed its complaint in this court.

The question posed to the court is whether or not the azalea plants above described, grown entirely in movable containers, are exempt from real and personal property taxes pursuant to ORS 307.320, which reads:

> "The value of any deciduous trees, shrubs, plants or crops, whether annual or perennial, growing upon agricultural land devoted to agricultural purposes, shall be exempt from assessment and taxation and shall not be deemed real property under the provisions of ORS 307.010."

Even before the advent of "containerization," some cases have held that nursery trees have all the characteristics of a stock in trade and are therefore personalty. *Story v. Christin,* 14 Cal2d 592, 95 P2d 925, 125 ALR 1402 (1939) ; *Jackson & Perkins Co. v. Stanislaus Co. Bd. of Sup'rs,* 168 Cal App2d 559, 335 P2d 976 (1959). The fact that the plants in the present case were always in containers makes it unnecessary to consider in detail the long line of variant decisions relating to nursery stock "attached to the soil" or "in the ground." (See, e.g., Annot, 125 ALR 1406.)

ORS 307.320 was enacted by Or L 1957, ch 615, § 1, as a consequence of the Supreme Court's decision in *State ex rel Medford Pear Co. v. Fowler,* 207 Or 182, 295 P2d 167 (1956). See 37 Or L Rev 67, 74 (1957). The decision sustained the act of the State Tax Commission (now the Department of Revenue) which placed upon the assessment and tax rolls the value of pear trees which had been omitted from the category of "land."

ORS 308.215 (1)(d) requires "land" to be segregated from "improvements" and "timber" on the real property roll. The language of the statute, "growing upon agricultural land" and "shall not be deemed real property," considered in conjunction with the historical background, is persuasive that the legislature intended to include in ORS 307.320 only those trees, shrubs, plants and crops traditionally considered as a part of the soil in which they were growing and therefore made "real property" as a matter of law by ORS 307.010 as well as by custom. The assessor treated the containerized plants of plaintiff as personal property, in the category of inventory or stock in trade.

The modern method of containerized growing of plants, now utilized by leading nurseries, had its genesis at about the time ORS 307.320 was being considered. The economic importance of the new method to the plaintiff cannot be overestimated. Since azalea plants usually take three years to reach the growth size desirable for marketing, the plaintiff's nursery operation necessarily involves plants at all intermediate stages in order to sustain a continuous supply for the market. The azaleas are grown entirely in containers, being transplanted to larger sizes as the plant grows. (Some 43 sizes and varieties of containers were introduced into evidence.) Containerization has made for ease of handling, decrease in damage, better control over the growth of the plant, elimination of balling and bagging the plant and other preparation for shipment, creating a more attractive product for the market.

If ORS 307.320 did not exist, there would be no question but that the assessor was correct in classifying plaintiff's containerized plants as tangible personal

property under subsection (3) of ORS 307.020, which reads:

"(3) 'Tangible personal property' means and includes all chattels and movables, such as boats and vessels, merchandise and stock in trade, furniture and personal effects, goods, livestock, vehicles, farming implements, movable machinery, movable tools and movable equipment."

A similar situation is found in the case of *Julius Roehrs Co. v. Div. of Tax Appeals,* 16 NJ 493, 109 A2d 611 (1954). In that case, it was necessary to interpret the New Jersey statute which provided that commercially planted and growing crops, trees, shrubs or vines "while in the ground" should not be listed for taxation as personal property and that the assessment of real property should be made without regard to any enhancement in value because of any commercially planted and growing crops, trees, shrubs or vines while in the ground. (A proviso in the statute set forth that nothing therein contained should prohibit taxation of the crops, trees, shrubs and vines after severance from the ground.) The appellant operated a commercial nursery in which its greenhouse stock consisted of plants set in trays and pots placed on benches several feet high. These were assessed as personal property in the category of "stocks in trade." The appellant contended that since the greenhouse stock was planted in soil (albeit in containers), it was "in the ground" within the meaning of the statute and therefore not subject to personal property taxation. The taxing authority contended that "the statutory exemption refers to stock commercially planted and growing in the open fields and does not in anywise embrace greenhouse stock which is not planted in the ground, as that term is widely understood, but in re-

ceptacles placed on bench surfaces several feet above the ground." The court held that the stock in trade of the commercial nurseryman fell within the terms of the general legislation taxing personal property, including merchants' stock in trade. The court refers to "the ground" as the "solid surface of the earth which is its ordinary and primary meaning." It concludes (page 499) that "the suggestion that because of practical considerations the statutory exemption granted to nursery stock in the ground should be extended to embrace nursery stock on benches in greenhouses must be addressed to the legislature rather than the courts."

■ This court adopts the reasoning of the above-quoted case. (Although this denies the plaintiff the exemption from property taxes found in ORS 307.320, it is entitled to the partial exemption provided in ORS 310.608 which in 1969 allowed a five percent exemption of the true cash value of inventory, including containers.)

In passing, it is interesting to note that after this case had been filed in the Oregon Tax Court and before it was argued, House Bill 1325 was placed before the 1971 regular session of the Oregon Legislative Assembly. As originally introduced, it amended ORS 307.320 to read as follows (with the new material italicized):

"Section 1. ORS 307.320 is amended to read:

"307.320. The value of any deciduous trees, shrubs, plants or crops, whether annual or perennial, growing upon agricultural land devoted to agricultural purposes, *including but not limited to nursery stock as defined by subsection (5) of ORS 571.005, whether growing in containers or not, in, on or above the agricultural land,* shall be exempt from

assessment and taxation and shall not be deemed real property under the provisions of ORS 307.010.

*Section 2. The amendment of ORS 307.320 by section 1 of this 1971 Act does not constitute a change in, but is declaratory of, existing law."*

On April 20, 1971, in the House Committee on Revenue, all of the foregoing was deleted and the following material substituted:

"Section 1. Section 2 of this Act is added to and made a part of ORS chapter 307.

"Section 2. Nursery stock, as defined in subsection (5) of ORS 571.005, whether bare root, or whether balled or heeled or growing in containers in or upon the ground, is exempt from ad valorem taxation in the hands of the grower or wholesalers, but not where held for sale at retail."

This amended version was approved as Or L 1971, ch 285, effective September 9, 1971.

No question was before the court as to the value ascribed to the plaintiff's personal property by the assessor. For the assessment date January 1, 1969, the true cash value of $10,000 set by the assessor's letter of May 27, 1969, (Plaintiff's Exhibit 2) is affirmed.