# SPRINGFIELD SUGAR & PRODUCTS COMPANY vs. STATE TAX COMMISSION.

Suffolk. September 11, 1980. — October 6, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Taxation*, Personal property tax: machinery, exemption; Corporate excise tax. *Statute*, Construction.

The value of machinery owned and leased by a company which was engaged in the business of owning and leasing it was to be included as a measure of the corporate excise of the lessor company under G. L. c. 63, § 30, par. 8, even though the lessee had mistakenly paid local property tax assessments on the machinery which was exempt from such local taxation under c. 59, § 5, Sixteenth (2). [588-591]

APPEAL from a decision of the Appellate Tax Board.

*Paul J. Lambert* (*Marc A. Reardon* with him) for the plaintiff.

*James A. Aloisi, Jr.,* Assistant Attorney General, for the State Tax Commission.

KAPLAN, J. The appellant Springfield Sugar & Products Company, as successor in interest to Harvey Leasing Corporation, appeals from a decision of the Appellate Tax Board which, on consolidated appeal under the "formal procedure," affirmed decisions of the appellee State Tax Commission declining to abate certain additional amounts of corporate excise assessed by the Department of Corporations and Taxation upon Harvey Leasing for its fiscal years ended June 30, 1973, and June 29, 1974.

The Appellate Tax Board adopted as its findings of fact the parties' stipulation of facts (excepting any conclusions of law intimated therein), from which we learn the following in substance.

Harvey Leasing was a domestic business corporation. During the periods in question it was "engaged in the business of owning and leasing" machinery for use in an automated grocery warehouse located in the town of Northborough. In 1971 Harvey Leasing leased the machinery to Springfield Sugar, which subleased it to New England Grocer Supply Co. (a subsidiary); and such, evidently, was the setup in 1973-1974.[1]

Considering that the machinery in the possession of New England Grocer in Northborough was nonexempt "machinery used in the conduct of the business" (G. L. c. 59, § 5, Sixteenth [2] — to be examined below in its fuller text; see also G. L. c. 59, § 18, "Machinery"), the town assessors assessed upon that company personal property taxes for the year 1973 and the half-year ended June 30, 1974, in the amounts, respectively, of $42,703.55 and $21,351.77 (each on an assessed valuation of $758,500). New England Grocer believed in good faith that the assessments were proper, and it paid them without contest.

Harvey Leasing, filing its corporate excise returns for its fiscal years 1973 and 1974 as a domestic business corporation of the "intangible property" type (see G. L. c. 63, § 30, par. 11), excluded the value of the same machinery from the measure of the excise, on the assumption that it was "tangible property situated in the commonwealth on said date [last day of the taxable year] and subject to local taxation" (G. L. c. 63, § 30, par. 8; see also § 32 [a] [ii]). The Department of Corporations and Taxation did not join in this assumption, and on dates in July and October, 1976, it made additional assessments upon the company for its fiscal years 1973 and 1974 in the amounts of $33,272.04 and $18,011.93 respectively (the "Federal adjusted basis" of the machinery being $4,169,428 and $3,127,072, see G. L. c. 63, § 30, par. 7). Harvey Leasing has sought abatement

---

[1] Subsequently, according to the record, Harvey Leasing merged into Springfield Sugar and thereafter New England Grocer merged into Springfield Sugar.

of these assessments by the State Tax Commission, then on appeal to the Appellate Tax Board, and now on appeal here.

We need to revert to the legislative arrangement for taxation of personal property by the local authorities, more particularly to the exemption, the exception to the exemption, and the reservation from the exception, of G. L. c. 59, § 5, Sixteenth (2), the statute already cited. The relevant text is: "The following property shall be exempt from taxation; . . . Certain Property of Certain Corporations. — Sixteenth, . . . (2) In the case of (a) a domestic business corporation . . . all property owned by such corporation other than the following: — . . . machinery used in the conduct of the business, which term, as used in this clause, shall not be deemed to include stock in trade . . . ."

It is settled that the machinery owned and leased by a company which is engaged in the business of owning and leasing it is "stock in trade" of the company and is saved from local taxation even when in the possession of a lessee. *New England Mut. Life Ins. Co.* v. *Boston,* 321 Mass. 683 (1947). Cf. *Assessors of Brockton* v. *Brockton Olympia Realty Co.,* 322 Mass. 351 (1948); *Collector of Taxes of Boston* v. *Cigarette Service Co.,* 325 Mass. 162 (1950); *Boston* v. *MacGray Co.,* 371 Mass. 825 (1977). Correspondingly, the value of this stock in trade is to be included as a measure of the corporate excise of the lessor company under G. L. c. 63, § 30, par. 8 (as quoted above), cf. par. 7. See *New England Mut. Life Ins. Co., supra* at 687.

Thus it appears (and was conceded at the argument) that the local authorities were mistaken in their property tax assessments upon New England Grocer, and the company was mistaken in yielding, although in good faith, to those assessments. But it appears, further, at least on a superficial view, that the State authorities were following the established law in assessing the additional excises on Harvey Leasing; and that would seem to conclude the present appeal in favor of the appellee State Tax Commission.

However, the appellant Springfield Sugar contends, in the right of Harvey Leasing, that the mistaken payment of the property tax asessments by New England Grocer to the local authorities should operate to relieve Harvey Leasing, and thus the appellant, of the corporate excise assessments payable to the State authorities. This notion of satisfying one tax by the (erroneous) payment of another seems far fetched even apart from the oddities of differences in the payors, in the payees, and in the amounts. There is argument that the expression "subject to local taxation" comprises cases where local property taxes have in fact been paid although not exigible according to the statute. But the draftsmen were setting up a general system in related statutes and would naturally envisage the correct application of each. It is said that the appellee's position attempts arbitrarily to prefix a word like "properly" or "legally" to the expression "subject to local taxation," but we think the thought is implicit in the expression itself; and it may be noted that the appellant, to advance its own argument, feels bound to make the perhaps more difficult interpolation in the statutory expression of an idea that the erroneous payment of the property tax shall have been made in "good faith." The interpretive canon is invoked that in case of ambiguity of text a reading should be adopted that favors the taxpayer. We see no ambiguity, and so need not examine whether we deal here with an "exemption" from tax to which the canon does not speak and to which a contrary interpretive approach is taken. See *Collector of Taxes of Boston* v. *Cigarette Serv. Co.*, 325 Mass. 162, 167 (1950). Cf. *Assessors of Holyoke* v. *State Tax Comm'n*, 355 Mass. 223, 234 (1969).

In the *Cigarette Serv.* case, *supra*, the court considered a situation where a corporate excise might have been paid on the footing that machinery was stock in trade: if that assumption turned out to be incorrect, could the assessment of local property tax on the machinery be resisted, although itself correct? The answer was no. The court per Wilkins, J., said: "That the defendant paid a corporate excise tax

based upon a computation which may have erred in failing to make such a deduction cannot avail the defendant [in resisting the local tax]." *Id.* at 166-167. This was the converse of the present case. It helps us toward the conclusion that the appellant here cannot prevail.

The appellant points to a practical difficulty, that the statute allows as little as thirty days for initiating an attack on a local property tax assessment (G. L. c. 59, § 59), while the Commonwealth has three years from the filing date of a return to assess additional corporate excise (G. L. c. 62C, § 26 [b]), so that a taxpayer's mistake regarding the former assessment may become quickly irretrievable. Passing over the circumstance that in the present case the taxpayer cognizant of its own situation would have little excuse for a mistake,[2] we think adjustment of such time prescriptions in the tax field, if there is to be any, is for the Legislature. Cf. *Boston* v. *Mac-Gray Co.*, 371 Mass. 825, 828 (1977).

The decision of the Appellate Tax Board is affirmed.

*So ordered.*

---

[2] A 1978 instrument of release appearing in the record indicates that the board of assessors of Northborough was abating taxpayer's 1977 and 1978 property tax assessments. This was matched in the release by taxpayer's abandonment of any claims in respect to assessments including those for 1973 and 1974, but it is conceded that no claims could survive for recovery of the latter assessments which had been paid.